CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA

OCT 2 8 2008

JOHN F CORCORAN, CLERK
BY: /s/
    DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| **RACHEL E. BYRD,** | ) | Case No. 5:07cv00097 |
| Plaintiff, | ) | **REPORT AND** |
| v. | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | By:  Hon. James G. Welsh |
| Commissioner of Social Security, | ) | U. S. Magistrate Judge |
| Defendant, | ) | |

The plaintiff, Rachel E. Byrd, appearing *pro se*, brings this action pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3) challenging the final decision of the Commissioner of the Social Security Administration ("the agency") denying her claims for disability insurance benefits (DIB") and for supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416(I) and 423, and 42 U.S.C. §§ 1381 *et seq.*, respectively. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The Commissioner's Answer was filed on May 14, 2008, along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered the following day, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). By subsequent order entered May 30, 2008, the plaintiff was directed to file her brief addressing why the Commissioner's decision was "not supported by substantial evidence or otherwise why the decision should be reversed and the case remanded." In the same order the

plaintiff was also advised that the case would be decided without oral argument unless it was requested in writing. Having since failed to file either a brief in support of her appeal or to request oral argument, same are deemed waived by the plaintiff, and the case is before the undersigned for report and recommended disposition.

A.  **Procedural History**

On August 22, 2005 the plaintiff protectively filed her applications for DIB and for SSI. (R.13,109.) Both applications alleged a disability onset date of January 25, 2005. (R.13,106-108,415-418.) They were administratively denied, both initially and on reconsideration; on July 11, 2006 the plaintiff requested an administrative hearing, and it was held before an administrative law judge ("ALJ") on January 9, 2007. (R.13,31-96,400-414.) Although fully informed of her right to representation, the plaintiff elected to appear at the hearing and to testify without the assistance of an attorney or other representative. (R.13,39-45,78-83.) On January 26, 2007 the ALJ issued his decision denying the plaintiff's claims. (R.10-25.) Seeking review of the ALJ's adverse decision, the plaintiff made a timely request to the Appeals Council. (R.419-437.) In her letter of appeal, the plaintiff alleged that the ALJ's decision was based on "many errors," including a failure to consider all of her medical evidence, consideration of mental health information she considered "not relevant" to her case, and "personal attacks made by the ALJ on [her] personal character and professionalism." (*Id.*.) On July 20, 2007 this request was denied (R.6-9 ), and the ALJ's decision, therefore, stands as the final determination of the Commissioner. *See* 20 C.F.R. § 404.981.

B.  **Plaintiff's Contentions**

In her Complaint the plaintiff makes the following claims: (1) that she "is disabled;" and (2) that the Commissioner's "conclusions and findings of fact ... are not supported by substantial evidence and are contrary to law and regulation." Given the fact that this court is obligated to construe *pro se* pleadings liberally, the plaintiff's Complaint is deemed to incorporate by reference her more detailed contentions of error presented to the Appeals Council. *See Gordon v. Leeke,* 574 F.2$^d$ 1147, 1151 (4th Cir. 1978) (*pro se* pleadings are held to a less stringent standard than those drafted by attorneys); *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (the federal courts are obligated to construe liberally a pleading filed by a *pro se* litigant in order to allow for the development of a potentially meritorious claim).

C.  **Conclusion**

Based on a careful review of the entire record, "substantial evidence" [1] supports the Commissioner's decision and that decision is consistent with applicable statutory and regulatory authority. For the reasons herein set forth, the undersigned is constrained to recommend that the

---

[1] "Under the ... Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel,* 270 F.3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater,* 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro,* 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze,* 368 F.2$^d$ 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater,* 76 F.3$^d$ at 589).

3

Commissioner be granted summary judgment in his favor and an appropriate final judgment be entered affirming the Commissioner's final decision denying benefits.

D.     Standard of Review

Under 40 U.S.C. §§ 405(g) and 1383(c)(3), the court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of disability insurance benefits or supplemental security income and that this conclusion was reached by application of the correct legal standard. *E.g., Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996); *Blalock v. Richardson*, 483 F.2$^d$ 773, 775 (4th Cir. 1972). In this inquiry, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig*.76 F.3$^d$ at 589).

E.     Facts

In connection with her applications, the plaintiff stated that she became unable to work due to pain associated with degenerative disc disease, anxiety, and depression. (R.15,113.) She was born in 1973 and was thirty-three years of age [2] on the date of the administrative hearing. (R.48,109, 110.)

---

[2] At this age the plaintiff is classified as a *"younger person,"* and pursuant to the agency's regulations, age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. § 404.1563(c).

4

She received her GED around 1991 and more recently completed several college-level courses. (R.48-50,120.) Her past relevant work included employment by the Virginia Department of Social Services as a welfare fraud investigator and as a support enforcement specialist, and she also worked on several occasions during the preceding fifteen years as a cashier. (R.50-52,68-69,114.)

At the hearing, the plaintiff testified that in December 2001, she underwent disc surgery at L4-5 and L5-S1, and in April of the following year she underwent similar disc surgery at T11/12. (R.65; *see* R.220,222.) These surgeries resulted in the plaintiff achieving temporary improvement in her back discomfort for approximately one year. (*See* R.216.) Thereafter, the plaintiff's medical records document her persistent complaints of chronic back pain associated with degenerative disc disease. (*See e.g.*, R.205-210,215-216,229,235,260-263,277,288,308,322,332.) However, multiple clinical, radiographic, and other studies failed to demonstrate any medically significant spinal or hip changes which would account for her chronic pain complaint. (R.193-203,211-212, 217-221,223-226,229-237,241,258-259,264-272,277-279,284-287,309-315.)

In January 2004, the Dr. John McCue at Mountainside Medicine concluded that the plaintiff remained functionally able to work, "as long as she can get up and move every hour." (R.276.) Neither his office's subsequent treatment notes (R.245-276), the neurosurgical examination notes of Dr. Eric Schubert (R.217-221), the neurological treatment notes of Dr. Robert Gorson (R.222), the examination and treatment notes of Dr. Syed Shafqat (R.277-289.369-370), nor the work capacities evaluation at Woodrow Wilson Rehabilitation Center ("WWRC") (R.309-315) suggest any significant change in her functional abilities.

Between November 2005 and December 2006 the plaintiff was also seen and evaluated from a mental health standpoint by Dr. Douglas DeGood (Augusta Pain Management). (R.316-336,290-395,398-399.) In his opinion the plaintiff exhibited "considerable depressive ideation" and "[had] considerable physical disability." However, neither his records nor a Sleep Medicine study in December 2006 contain any objective diagnostic finding suggestive of a meaningful change in the plaintiff's physical condition during the time that she was being seen at Augusta Pain Management. (R.316-336,390-395, 396-397.) At most, Dr. DeGood's records suggest that the plaintiff's medical condition was being impacted negatively by a number of stress-related psychological issues, but she nevertheless exhibited "near normal" attention span and concentration, a "stable" mood, a "normal" daily routine, and no cognitive or emotional dysfunction. (R.316-324,397-398.)

Consistent with Dr. DeGood's mental health assessment, a March 2006 performance evaluation at Woodrow Wilson Rehabilitation Center ("WWRC") found that the plaintiff exhibited some self-limiting behaviors, but this was judged not to impact negatively her physical abilities in any meaningful way.[3] (R.309-315.)

Based on her demonstrated physical ability to perform work activities, the WWRC evaluators concluded that the plaintiff was capable of performing work activities at a sedentary exertional

---

[3] A general physical examination conducted in connection with the sleep study showed the plaintiff to be well-developed, well-nourished, in no acute distress, and to have a full range of cervical motion, no costovertebral angle (CVA) tenderness, no spinal tenderness, no extremity clubbing, no skin discoloration, and no strength or sensory deficits. (R.396.) She was found to have sleep apnea and was started on continuous positive airflow pressure (CPAP) therapy. (R.397.)

6

level.[4] (R.309-315.) Based on their separate reviews of the plaintiff's medical records in December 2005 and later in May 2006, two state agency medical consultants also concluded that the plaintiff possessed the residual functional capacity to perform sedentary work activity on a regular and sustained basis. (R.303-308,353-359.)

Similarly, psychiatric reviews of the plaintiff's medical records in December 2005 and in May 2006, two state agency consulting psychologists concluded that the plaintiff's mental health issues (anxiety, depression and adjustment disorder) were not severe [5] and that she was neither cognitively nor emotionally dysfunctional. (R.290-302,337-349.)

On referral by Dr. Shafqat, the plaintiff was seen by Dr. Raymond Alderfer in December 2006. (R.373-389.) At that time, she complained of low energy, fatigued, a depressed mood, irritability, and fidgetiness. (R.373.) Throughout his evaluation, the plaintiff exhibited good eye contact; her thoughts were logical and coherent; her affect was "appropriate;" she exhibited "adequate" insight and judgment, and she demonstrated no psychomotor agitation or retardation. (R.374.) Dr Alderfer's mental health impressions were that the plaintiff had moderate bipolar symptoms, moderate-to-severe conflicts with her mother and boyfriend, and economic problems.

---

[4] Sedentary work involves lifting items weighing up to 10 pounds and occasionally carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing may be necessary to carry-out the job duties. *See* 20 C.F.R. § 404.1567(a).

[5] Quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *See also* 20 C.F.R. § 404.1520(c).

(*Id.*) He started her on Lamictal and scheduled her for a follow-up appointment in six weeks. (*Id.*)

Thereafter, in January 2007 the plaintiff submitted a letter in support of her applications from Dr. DeGood. (R.398-399.) After noting that "[a]s a clinical psychologist [he was] not in a position to comment directly on [the plaintiff's] level of physical disability," Dr. DeGood opined that the plaintiff's "physical pain and disability" contributed significantly to her "depression and [to her] gradually eroded ... coping skills." In his view, these mental health issues were exacerbated by her "lack ... of adequate personal funds" to follow-through with recommended medical treatment, and for these reasons he "seriously question[ed] whether she [was] employable even on a part-time basis."(*Id.*)

Utilizing the agency's sequential decision-making process, [6] the ALJ concluded that the plaintiff had not been under a disability between January 25, 2005 [7] and the date of his written decision. (R.13-25.)

F.    Analysis

In his opinion dated January 26, 2007, the ALJ found that the plaintiff suffered from a back impairment which was "severe" within the meaning of the regulations, and he further found that the

---

[6] The agency's sequential decisional process is outlined in detail in 20 C.F.R. § 404.1520.

[7] Although the plaintiff contended before the Appeals Council that this disability onset date is "incorrect" (R.421), this is the onset date alleged in fact in her applications. (R.97,106,109,114,415.)

plaintiff had no mental impairment that was severe under the regulations. (R.15.)

It is axiomatic that as part of his sequential consideration of the plaintiff's applications the ALJ was obligated to consider any physical and any mental impairments suggested by the plaintiff's medical record. 20 C.F.R. §§ 404.1520 and 404.1520a; 20 C.F.R. §§ 416.920 and 416.920a. In the case now before the court, the ALJ clearly did so. He outlined in detail the plaintiff's entire medical record, including *inter alia* the opinions of Dr. DeGood and Dr. Alderfer. (R.14-22.) He next assessed the plaintiff's residual functional capacity and found that she retained the functional capacity for sedentary work with a sit/stand option [8] and which required no climbing of ladders or ropes, and no postural activities. [9] (R.23.) Then, in accordance with the agency's sequential evaluation process, the ALJ concluded that the plaintiff was capable of performing her past relevant work as a fraud investigator, support enforcement specialist, or general office clerk. [10] (R.24.)

In summary, the Commissioner's decision demonstrates the ALJ's discharge of his multi-stage decisional responsibilities. He considered the entire record, including the medical evidence, the plaintiff's "statements and symptoms," her hearing testimony, her receipt of unemployment

---

[8] The opportunity to change positions during the performance of work activity is typically described as the "sit/stand option" or "sit/stand limitation." *See Gibson v. Heckler,* 762 F.2d 1516, 1518 (11th Cir., 1985)

[9] Postural activities listed by the ALJ included: climbing stairs or ramps, crouching, balancing, stooping, kneeling, and crawling.

[10] At the hearing Robert Jackson, a vocational witness, testified that an individual with the plaintiff's history of skilled sedentary work for the Virginia Department of Child Support Enforcement and sedentary work as a semi-skilled office clerk would be able to perform those jobs with the functional limitations identified by the ALJ.

9

compensation after she quit her last job,[11] her enrollment and successful completion of a number of college courses, her minimal recent treatment, and her decision not to participate in physical therapy. (R.23-24.) He considered the plaintiff's vocational profile and her work history, and he considered her residual functional capacity to perform any of her past work. And in making this analysis, the ALJ properly took into account the plaintiff's exertional abilities and her past work-related functions.

While the plaintiff may have very real functional limitations and be unable to perform certain forms of work activity, the issue in this case is whether she is disabled from all forms of substantial gainful activity. *See* 42 U.S.C. §§ 423(d)(2) and 1382c(a)(B). In making this analysis, four forms of proof must be considered: (1) the objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of an impairment's physical manifestations, as indicated by the plaintiff's testimony; and (4) the claimants age, education, vocational history, and residual skills. *Vitek v. Finch*, 438 F.2$^d$ 1157, 1159-60 (4th Cir. 1971); *Underwood v. Ribicoff*, 298 F.2$^d$ 850, 851 (4th Cir. 1962).

After carefully reviewing the entire administrative record, the undersigned concludes that the law judge carefully and properly considered each of these forms of proof. Contrary to the plaintiff's contention, all of her medical evidence was considered. All of the evidence considered by the ALJ

---

[11] The ALJ noted in his written decision that the receipt of unemployment benefits indicates that one is "ready, willing and able to work." (R.23) Her receipt of such compensation, however, "does not in itself prove [an] ability to work." *Lackey v. Celebrezze*, 349 F.2$^d$ 76, 79 (4th Cir. 1965).

was decisionally relevant and proper, including her mental health records and treatment notes. And there is simply nothing either in the decision or in the administrative record suggestive personal animus or discriminatory reason on the part of the law judge in this case.

As a general rule, the resolution of evidentiary conflicts is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently *Richardson v. Perales,* 402 U.S. 389, 400 (1971); *Oppenheim v. Finch,* 495 F. 2nd 396, 397 (4th Cir. 1974). In the case now before the court, such conflicts in the evidence were weighed and resolved by the ALJ. His findings are supported by substantial evidence, and accordingly, the final decision of the Commissioner should be affirmed. *Laws v. Celebresse,* 368 F.2$^{d}$ 640, 644-45 (4th Cir. 1966).

In reaching this decision, the undersigned does not suggest that the plaintiff is free of pain, depression, anxiety, or other symptoms about which she complains. Indeed, the medical record confirms that she has degenerative disc disease with a chronic pain symtomatology, exhibits bipolar disorder symptoms, and has persistent depressive symptoms. The medical record, however, contains no documentation by a physician to suggest that the plaintiff is totally disabled from all forms of work activity, and it supports the finding that a number of the plaintiff's symptoms are situational in nature. In addition, it must be recognized that an individual's inability to work without subjective symptoms does not of itself render a person totally disabled. *Craig v. Chater,* 76 F.3$^{d}$ 585, 594-95 (4th Cir. 1996).

G.   **Proposed Findings of Fact**

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is supported by substantial evidence;

2. The Commissioner's final decision gave proper consideration and weight to the medical opinions of each treating or examining medical source;

3. The Commissioner's final decision gave proper consideration to all of the medical evidence;

4. Substantial medical and activities evidence in the record supports the Commissioner's findings concerning the plaintiff's symptoms and residual functional limitations;

5. Substantial evidence supports the Commissioner's finding that through the decision date the plaintiff was not disabled within the meaning of the Act;

6. Substantial evidence supports the Commissioner's finding that through the decision date the plaintiff retained the residual function capacity to perform her past relevant work or to perform other work activity on a regular and sustained basis at a sedentary level of exertion with a sit/stand option and with climbing and other postural restrictions;

7. The medical and activities evidence in the record was decisionally relevant and was appropriately considered by the ALJ in accordance with applicable agency regulations;

8. The final decision of the Commissioner contains no suggestion either of personal animus or other prejudice; and

9. The plaintiff has not met her burden of proving disability.

**H..** **Recommended Disposition**

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING

the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the defendant, DENYING plaintiff's claim, and DISMISSING this case from the docket of the court.

I.  **NOTICE TO THE PARTIES**

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

DATED: 28th day of October 2008.

/s/ *James G. Welsh*
United States Magistrate Judge